IN THE UNITED STATES DISTRICT COURT FOR THE **FILED**

EASTERN DISTRICT OF CALIFORNIA   **JUN 1 8 2009**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

UNITED STATES OF AMERICA,

        Plaintiff,

           v.

GLORIA GIANNINI,

        Defendant.

_____/

CR. NO. S-07-0018 EJG

ORDER AFTER HEARING, DENYING
MOTION TO RECUSE

This matter was before the court on June 1, 2009 for hearing on defendant's motion to recuse. Assistant U.S. Attorney Steven Lapham appeared on behalf of plaintiff. Krista Hart appeared on behalf of defendant. After considering the parties' written and oral arguments and the record in this matter, and for the reasons stated in the court's oral analysis in open court and on the record and contained in the attached transcript, the court enters the following order.

1.   Defendant's motion to recuse is DENIED.

2.   Hearing on defendant's motion to withdraw plea will be held at 10:00 a.m. July 31, 2009.

IT IS SO ORDERED.

Dated: June **17**, 2009

                           EDWARD J. GARCIA, JUDGE
                           UNITED STATES DISTRICT COURT

1      UNITED STATES DISTRICT COURT

2      EASTERN DISTRICT OF CALIFORNIA

3        ---oOo---

4 THE UNITED STATES OF AMERICA,   )
                 )
5        Plaintiff,  )
              )Case No. 2:07-cr-018 EJG
6 vs.            )
              )
7 GLORIA GIANNINI,      )
              )
8       Defendant. )
              )
9

10        ---oOo---

11   BEFORE THE HONORABLE EDWARD J. GARCIA, JUDGE OF
  THE UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF
12 CALIFORNIA, AND ON JUNE 1, 2009.

13

14    REPORTER'S TRANSCRIPT OF PROCEEDINGS
  DEFENDANT'S MOTIONS:  WITHDRAWAL OF PLEA & RECUSAL and
15    MOTION TO CONTINUE JUDGMENT & SENTENCING

16        ---oOo---

17       APPEARANCES:

18 For the Plaintiff:    ROBERT STEVEN LAPHAM
            UNITED STATES ATTORNEY'S OFFICE
19            501 I Street, Suite 10-100
            Sacramento, CA 95814
20

21 For the Defendant:    KRISTA HART
            ATTORNEY AT LAW
22            LAW OFFICES OF KRISTA HART
            428 J Street, Suite 350
23            Sacramento, CA 95814

24 Reported by:  VICKI L. BRITT, RPR, CSR No. 13170

25

1          JUNE 1, 2009 AT THE HOUR OF 2:00 P.M.

2          BEFORE THE HONORABLE EDWARD J. GARCIA

3                        ---oOo---

4          THE CLERK:  CR S-07-18, United States vs. Gloria

5    Giannini.

6          MR. LAPHAM:  Good afternoon, your Honor.  Steve

7    Lapham for the United States.

8          THE COURT:  Mr. Lapham.

9          MS. HART:  Good afternoon, your Honor.  Krista

10   Hart on behalf of Gloria Giannini, who is present, in

11   custody.

12         THE COURT:  Ms. Hart.

13         This case is on calendar this afternoon for a

14   hearing on the probation officer's report, judgment and

15   sentence.  However, Defendant has now filed a motion to

16   recuse me and to withdraw her guilty plea, Defendant having

17   plead guilty pursuant to a plea agreement August 29, 2008.

18         Sentencing was originally scheduled for

19   January 23, 2009.  On that date, Defendant's retained

20   counsel, David Silber, announced he had a conflict, which he

21   could not disclose without violating the attorney/client

22   privilege.  He was relieved, and panel attorney Ms. Krista

23   Hart was appointed and sentencing was continued to

24   February 24, then to April 15, and finally to today.

25         Now, however, Defendant has filed a motion

```
 1    pursuant to Section 455 of Title 28, U.S. Code, to recuse

 2    the undersigned and reassign the case to another judge.

 3              I've read the motion, reviewed the record and the

 4    law, and I'm prepared to rule.

 5              Ms. Hart, is there anything you want to add or

 6    emphasize on your motion to recuse?

 7              MS. HART:  No, Your Honor.

 8              THE COURT:  Mr. Lapham, if you submit the matter,

 9    I'm inclined to deny the motion.

10              MR. LAPHAM:  Submitted, Your Honor.

11              THE COURT:  Defendant has not met the standards

12    for recusal required by statute and case law.

13    Disqualification of federal judges is governed by two

14    statutes, the first Section 144 of Title 28, U.S. Code,

15    requires a person seeking disqualification to file an

16    affidavit showing that the judge has a personal bias against

17    him or her or in favor of an adverse party.  That statute is

18    strictly construed and filing of a timely and sufficient

19    affidavit is a mandatory prerequisite.  In that connection,
                          Azhocar
20    see U.S. v. Astro Car, 581 F.2d 735, a 1978 9th Circuit case     ETG

21    not cited by the parties.

22              The second statute, Section 455 of Title 28, is

23    directed to the judge and requires that he disqualify

24    himself in any proceeding where his impartiality might

25    reasonably be questioned.  This section also mandates
```

1   disqualification if the judge has a personal bias or

2   prejudice concerning a party. It is under this section that

3   Defendant's motion has been filed and will be analyzed.

4           Defendant moves to disqualify the Court on the

5   basis of comments that I have made during the life of this

6   case, suggesting that I will not be fair in assessing her

7   credibility in connection with her recently filed motion to

8   withdraw her guilty plea.

9           Analyzed under an objective standard, Defendant

10   argues recusal is required because a reasonable person

11   reviewing the facts would conclude that the Court's

12   impartiality might reasonably be questioned.

13           To decide the motion, it's necessary to review the

14   two-and-one-half-year history of the case before me.  In

15   addition to a review of the proceedings Defendant ordered

16   transcribed, which are attached to her motion, the Court has

17   also reviewed its personal notes made at all of the

18   proceedings in this case.  In that connection see Shaw v.

19   United States, 878 F.2d 1156, a 9th Circuit 1989 case not

20   cited by the parties.

21           That case says, among other things, that judges

22   may use their own notes and recollections, as well as their

23   common sense, to supplement the record. It is important to

24   note that the comments made by the Court, which Defendant

25   contends warrant disqualification, have been directed at her

1  participation in what the Court commonly refers to as the
2  attorney game, a situation in which a defendant, in order to
3  obtain a continuance of the case, switches or attempts to
4  switch counsel, either among retained counsel or between
5  appointed and retained counsel, in order to delay the case.

6          In this case, Defendant has demonstrated her
7  expertise at the attorney game, having already gone through
8  four attorneys in a two-and-one-half-year span, an assistant
9  federal defender, a panel attorney, a privately retained
10 attorney, and now recently another panel attorney.

11         Defendant's first appearance before the District
12 Court was March 9, 2007, at which time she requested a two
13 week continuance to hire counsel.  Five weeks later, not
14 having accomplish that goal, but having received two
15 additional continuances of the status conference for that
16 purpose, Defendant again appeared before the District Court
17 to report her progress, which was nil.

18         At that time, the Court began to express its
19 displeasure with the continuances, noting that the case has
20 been continued several times now at the Defendant's request
21 to get an attorney.

22         A potential attorney whom the Defendant was
23 attempting to hire was in the audience that morning and told
24 the Court he had not been formally retained, but that the
25 check was, quote, in the mail, unquote.  To which the Court

ESG

DIAMOND COURT REPORTERS  (916) 498-9288

1   responded, it did not want to keep continuing the case based
2   solely on Defendant's assurances that she would get an
3   attorney.

4          While the Court erred at this hearing when I said
5   the case had been pending for almost a year and a half, even
6   though it had been on the docket for a little over four
7   months, I was nonetheless correct when I stated that the
8   Defendant had asked for and received several previous
9   continuances to hire an attorney, all of which have proved
10  futile.

11         The parties appeared before the Court six weeks
12  later, on June 1, 2007, and confirmed that in fact the
13  agreement to retain an attorney had fallen through.  Panel
14  attorney Joseph Wiseman remained in the case.  The Defendant
15  was arraigned on a superseding indictment and the case was
16  continued from time to time, either by written stipulation
17  or following appearances in court for the next year, while
18  discovery and investigation were ongoing.

19         At a status conference on November 2, 2007, I
20  reminded the parties that the case was getting old fast.
21  Attorney Wiseman told the Court he was awaiting additional
22  discovery relating to recent events and would set a date for
23  trial or resolution at the next status conference.

24         On December 21, 2007, a trial confirmation hearing
25  of March 7, 2008, and a jury trial date of March 24, 2008,

 1  were set.  On March 7, 2008, the trial confirmation date,

 2  Attorney Wiseman informed the Court that the Defendant was

 3  in the process of retaining counsel, which would be

 4  completed on March 12, 2008, and that he was reviewing

 5  audiotapes of phone conversations made by Defendant at the

 6  jail, which might raise a conflict of interest and which

 7  would necessitate a continuance.

 8          The trial date of March 24th was vacated and a

 9  status conference date of April 18, 2008 was set.  The Court

10  told the Defendant that her new counsel would need to

11  familiarize himself with the case by the date of the next

12  status conference.  Defendant indicated she understood.

13          Three days before that status conference, the

14  Court received and rejected a proposed stipulation for

15  another continuance and directed all parties to appear

16  before the Court.

17          On April 18, 2008, I expressed my frustration to

18  the parties at the status conference and their inability to

19  get the case to trial and concerning Defendant's repeated

20  continuances for the purpose of changing counsel.

21          When Defendant attempted to explain that this time

22  she really did have retained counsel, I was slow to believe

23  her, telling her that she didn't have too much credibility

24  before this Court.  At the time I was considering the past

25  history of the case and counsel's representations that

1   counsel would be on board by March 12, 2008.

2        The Court's statement was based on a number of

3   factors:  Defendant's less than truthful prior assertions

4   regarding the hiring of counsel; the nature and extent of

5   the fraud charges against her in the 48-count indictment;

6   Defendant's documented prior convictions for fraud; and the

7   contents of letters she had mailed directly to chambers in

8   June and July of 2007.

9        During the status conference, I questioned

10  Defendant concerning whether, in fact, she had retained

11  counsel or whether the check was in the mail.  After

12  expressing my frustration and impatience with the delays in

13  the case, and in an effort to determine how much time a new

14  attorney would need to get up to speed, I deferred to the

15  parties to assess its complexity.  Attorney Wiseman stated

16  that based on his experience, he said, "I don't think it is

17  a terribly complicated fraud allegation."

18       The Assistant United States Attorney stated his

19  belief that the Government can put on its case in two days.

20  A trial date of June 9, 2008, and a trial confirmation

21  hearing of May 23, 2008 were then set.  In addition, a

22  further status conference of May 2, 2008 was set.

23       On May 2, 2008, newly retained counsel, David

24  Silber, appeared for Defendant, conditioning his

25  representation on the Court's agreement to continue the

1  trial date beyond June of that year.  Once again, frustrated
2  and impatient, the Court remarked, "That's the game
3  Defendant has been playing for months is how to get a
4  continuance is to get a new lawyer."

5         Despite its reluctance, the Court granted new
6  counsel a continuance of the trial date to September 15,
7  2008, with a trial confirmation date of August 29, 2008.

8         On the morning of the trial confirmation hearing,
9  the parties submitted a plea agreement.  Pursuant to its
10  terms, Defendant pled guilty to one count, with the parties
11  agreeing on various guideline variables, and with each side
12  making various promises.  The plea of guilty was accepted.
13  Judgment was entered, and the matter was referred to the
14  probation office for a presentence report and
15  recommendation.  Sentencing was postponed until November 7,
16  2008, and was continued twice more by agreement of the
17  parties to January 23, 2009.

18         On the morning of sentencing, Attorney Silber
19  stated he had a conflict and he had to withdraw from the
20  case, but was unable to articulate the reasons because it
21  would violate the attorney/client privilege and might cause
22  the Court to have a different view of the case.

23         By this point, the Court's impatience and
24  frustration with Defendant's misuse of counsel and
25  manipulation of the justice system was at its apex.

1          After reciting the history of lengthy continuances

2    previously granted in the case, I told counsel I was not

3    inclined to grant another, especially since I had already

4    read the probation report, Defendant's statement accepting

5    responsibility for her actions, and the probation officer's

6    statement that Defendant, quote, is so ingrained in her

7    deception, she does not know when she is lying or telling

8    the truth, unquote.  See the presentence report, page 85,

9    paragraph 85.

10          It is on this record then that Defendant suggests

11   the Court has exhibited a predisposition against her so

12   extreme as to be unable to fairly judge her motion to

13   withdraw her now-pending guilty plea.  Those are the facts.

14          Now, let's turn to the law.  It is a well-set

15   principle of law that to warrant recusal a judge's bias or

16   prejudice must originate from an extrajudicial source, or as

17   the Defendant argues here, "be so extreme as to display a

18   clear inability to render fair judgment."  The latter is

19   what many refer to as pervasive bias.  This is ~~case~~ <sup>the teaching</sup> of the

20   1994 Supreme Court Liteky case cited by Defendant.

21          A motion to recuse is analyzed using an objective

22   test, where a reasonable person, with knowledge of all the

23   facts, would conclude that the Court's impartiality might

24   reasonably be questioned.  See Clemens v. U.S. District

25   Court, a 9th Circuit case cited by Defendant.

ESG

1           Here Defendant takes issue with the Court's use of

2    words and phrases directed at her such as "playing games,

3    you don't have too much credibility before this court, and

4    Defendant is a complete fraud, and you can't believe

5    anything she says." In addition, she apparently finds

6    prejudicial the Court's assessment that this is not a

7    complex case, which does not take months of preparation.

8           From these statements, Defendant concludes that

9    the Court has developed a bias against her in all matters

10   which will preclude from fairly considering a motion to

11   withdraw her plea and her accompanying affidavit.

12          Defendant's assertions assume too much. First of

13   all, the Court's assessment of Defendant's credibility was

14   made in connection with her repeated requests to continue

15   the case for purposes of changing counsel and that

16   assessment was proved true. At least six of the

17   continuances in this case have been for the stated purpose

18   of hiring counsel. On two of the occasions, the Court was

19   told that counsel is on their way and that the check was in

20   the mail.

21          Second, at the time the Court's most recent

22   comments were made, it had before it Defendant's plea of

23   guilty, her criminal record, her statements explaining her

24   actions in admitting her guilt, and another court officer's

25   assessment of her candor or lack thereof. Thus, the Court's

1  comments are in part a function of its assessment of the
2  evidence as presented in these documents.

3  As the Liteky case noted, "Remarks which are
4  critical or disapproving of or even hostile to the parties
5  do not ordinarily support disqualification.  In fact, at the
6  conclusion of a trial, and after reviewing all of the
7  evidence, a judge may be exceedingly ill-disposed towards a
8  defendant who has been shown to be a thoroughly
9  reprehensible person.  Such an opinion, however, is based on
10  knowledge learned in proceedings before the judge and is no
11  basis for recusal.

12  "Impartiality is not gullibility.
13  Disinterestedness does not mean childlike innocence.  If a
14  judge did not form judgments of the actors ~~to~~ in those          ETG
15  courthouse dramas called trials, he could never render
16  decisions."  All these quotes are from the Liteky case.

17  "Similarly, a judge's comments that the defendant
18  is going to get convicted, then immunized, then refuse to
19  testify, and I'll send her to jail for contempt as often as
20  necessary until she talks, reflected a belief of what would
21  occur at trial and did not show inability to be impartial."
22  These were judge's comments in a case not cited, U.S. v.
23  Young, 43 F.3d 1405, a 10th Circuit 1995 case.

24  In Young, the defendant sought disqualification of
25  the trial judge following his refusal to accept defendant's

1   plea, and his comments made at his scheduling conference

2   concerning future proceedings in the case.  The judge denied

3   recusal and was affirmed on appeal.  The Appellate Court

4   stating, "Nothing in the remarks indicates the judge was

5   unable or unwilling to carry out his responsibilities

6   impartially.

7           "While the judge's comments reflected impatience

8   and exasperation, the setting in which they were made

9   indicates that the judge intended to convey a message to

10  defendant.  Taken in context, however, it does not show a

11  personal bias or prejudice within the meaning of the recusal

12  statute."  These are all quotes from the U.S. v. Young case.

13          Likewise, the court's comments on Defendant's

14  credibility evaluated in the context of the proceedings in

15  this case for the past two-and-a-half years do not show a

16  deep-seated antagonism toward Defendant warranting

17  disqualification.

18          The motion for recusal is denied, and the Court

19  will prepare a summary of the Court's oral bench decision

20  and attach a reporter's transcript of the Court's oral

21  analysis.

22          Next we have before the Court Defendant's motion

23  to withdraw a plea, and also judgment and sentence.  The

24  judgment and sentence in this case will trail the decision

25  on Defendant's motion to withdraw a plea.

1          The motion to withdraw a plea was filed shortly

2     before sentencing and the Government requested additional

3     time to respond to Defendant's motion to withdraw the plea,

4     and that request will be granted.

5          How much time do you think you need, Mr. Lapham?

6          MR. LAPHAM:  Well, Your Honor, actually, to be

7     perfectly accurate, I indicated that I tried to get the

8     response on file as quickly as possible, and if the Court

9     were inclined to grant the motion, thought there were

10    additional issues that needed to be briefed, I would like

11    that opportunity.  But if the Court believes you have

12    everything before you that's necessary --

13         THE COURT:  I'd like to have a more complete

14    response, Mr. Lapham.

15         MR. LAPHAM:  All right.  I'm currently in trial.

16    I expect to be in trial for the next two weeks, so I'd ask

17    for two weeks after that.  So an additional four weeks if

18    that's all right with the Court.

19         THE COURT:  Ms. Hart.

20         MR. LAPHAM:  Or, Your Honor, I can do it in three

21    weeks.

22         MS. HART:  Three weeks is fine.

23         THE COURT:  You want a reply time, Ms. Hart?

24         MS. HART:  Just one week.

25         MR. LAPHAM:  Your Honor, I'm out of the country

1   from July 8 through July 25th.

2         THE COURT:  So we can't hold a hearing.

3         THE CLERK:  Until July 31st at the earliest.

4         THE COURT:  We'll schedule a hearing on the motion

5   to withdraw the plea on July 31, '09, 10:00 a.m.  That may

6   have to be extended anyway.

7         I want to explain something to you, Ms. Giannini,

8   on a motion to withdraw a plea, where you disagree or attack

9   the competence of the attorney as a basis for the motion to

10  withdraw a plea, you have to understand that you're waiving

11  the attorney/client privilege.  Has that been explained to

12  you?  What's your answer?

13        THE DEFENDANT:  Yes.

14        THE COURT:  You do understand that?

15        THE DEFENDANT:  Yes.

16        THE COURT:  Anything else for now, Ms. Hart?

17        MS. HART:  No, Your Honor.

18        THE COURT:  Mr. Lapham?

19        MR. LAPHAM:  No, Your Honor.

20        THE COURT:  Thank you, Counsel.

21        THE CLERK:  Do we still stick with the same

22  briefing schedule since it's going so long?

23        THE COURT:  Yes.

24        I might advise you, Ms. Hart, that I considered

25  your brief in connection with your belief that you can file

1  an interlocutory appeal on the Court's denial of the recusal

2  motion.  Do you still believe you can do that?  I don't

3  think so.  Anyway, you ought to read the cases, okay?

4            MS. HART:  Fine.

5            MR. LAPHAM:  Your Honor, since we are kicking it

6  out to July 31st, I wondered if I could have that extra week

7  because I'm not certain how this trial is going to go.  I'm

8  hoping I'll have sufficient time to get the brief on file.

9            THE COURT:  Well, I'm inclined to give you the

10  extra week because I assume you're going to notify the

11  attorney Ms. Giannini is attacking.

12            MR. LAPHAM:  I intend to.

13            THE COURT:  So that would be August --

14            MR. LAPHAM:  Your Honor, I think we could probably

15  keep the hearing date the same.

16            THE COURT:  Oh, you wanted four weeks.  You want

17  five weeks for the --

18            MR. LAPHAM:  No, four weeks would be fine.

19            THE CLERK:  That's June 29 for Government's

20  opposition; July 6 for defense reply.

21            THE COURT:  And the hearing July 31?

22            THE CLERK:  Hearing July 31.

23            THE COURT:  Okay, that will be the order.  Thank

24  you, Counsel.

25            (Whereupon, court adjourned.)

```
 1                         REPORTER'S CERTIFICATE

 2

 3     STATE OF CALIFORNIA  )
                           )ss.
 4     COUNTY OF SACRAMENTO )

 5

 6             I, Vicki L. Britt, Certified Shorthand Reporter

 7     and Registered Professional Reporter, hereby certify that I

 8     was duly appointed and qualified to take the foregoing

 9     matter;

10

11             That acting as such reporter, I took down in

12     stenotype notes the testimony given and proceedings had;

13

14             That I thereafter transcribed said shorthand notes

15     into typewritten longhand, the above and foregoing pages

16     being a full, true and correct transcription of the

17     testimony given and proceedings had.

18

19

20                         /s/Vicki L. Britt
                           Vicki L. Britt, RPR, CSR No. 13170
21

22

23

24

25
```